# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| GEORGE H. HOLLEY, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 9679-VCP |
| | : | |
| v. | : | |
| | : | |
| NIPRO DIAGNOSTICS, INC., a | : | |
| Delaware corporation, f/k/a/ HOME | : | |
| DIAGNOSTICS, INC., a Delaware | : | |
| corporation, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

Submitted: August 6, 2014
Decided: December 23, 2014

Arthur L. Dent, Esq., Kevin P. Shannon, Esq., Matthew F. Davis, Esq., POTTER, ANDERSON & CORROON LLP, Wilmington, Delaware; Kevin H. Marino, Esq., John D. Tortorella, Esq., John A. Boyle, Esq., MARINO, TORTORELLA & BOYLE, P.C., Chatham, New Jersey; *Attorneys for Plaintiff George H. Holley.*

Francis G.X. Pileggi, Esq., ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, Delaware; *Attorneys for Defendant Nipro Diagnostics, Inc.*

**PARSONS, Vice Chancellor.**

This is yet another advancement case in which a company disputes its obligation to pay the attorneys' fees of an officer or director during the course of litigation. The plaintiff pled guilty to two counts of criminal insider trading relating to tips given to family and friends about the impending acquisition of the company he founded. Previously, the plaintiff had signed an indemnification agreement specifically excluding any obligation of the company to indemnify the plaintiff for insider trading and other securities violations. Several civil suits have followed and continue to be litigated, including three initiated by the company's acquirer and one brought by the Securities and Exchange Commission ("SEC"), relating to various insider trading allegations and the plaintiff's rights to advancement and indemnification.

The defendant has moved to dismiss or stay this case in favor of an allegedly first-filed action in Florida that seeks to recoup money initially advanced to the plaintiff by the company. The plaintiff has moved for partial summary judgment on those counts of his Complaint that seek advancement of legal expenses incurred in defending against the related civil litigation and fees on fees. For the reasons that follow, I conclude that the defendant's motion to dismiss or stay should be denied and that the plaintiff's motion for partial summary judgment should be granted.

## I.    BACKGROUND[1]

Plaintiff, George H. Holley, was the founder and chairman of Home Diagnostics, Inc. ("HDI"), a Delaware corporation.

Defendant, Nipro Diagnostics, Inc. ("Nipro" or the "Company"), is a Delaware corporation.  On February 3, 2010, Nipro signed a merger agreement to acquire HDI through an all cash tender offer.  The merger agreement became effective on March 15, 2010, at which time HDI's Certificate of Incorporation was amended and restated.  Upon acquiring HDI, Nipro assumed its predecessor's obligations, which include the advancement provisions at issue here.

### A.    The Underlying Lawsuits

Shortly after the announcement of the Nipro–HDI merger, the SEC began an investigation of suspicious trading in the stock of HDI at or around the time of the merger announcement (the "SEC Investigation").  On May 20, 2010, Holley requested, by letter, that HDI advance his legal fees and expenses in the SEC Investigation.  Concurrently, Holley executed an undertaking whereby he promised "to repay to the Company the amount of such expenses so advanced if it shall ultimately be determined that [he is] not entitled to be indemnified by the Corporation as authorized by the Company's Certificate of Incorporation, its Bylaws, any agreements of Indemnification, or applicable law."[2]

---

[1]    Unless otherwise noted, the facts recited herein are drawn from the well-pled allegations of the Amended and Supplemental Verified Complaint (the "Complaint"), together with its attached exhibits.

[2]    Compl. ¶ 12.

2

Nipro began advancing Holley's fees and expenses relating to the SEC Investigation in June 2010. By November 2010, Nipro had advanced roughly $175,000 to Holley's counsel.

The first of several relevant lawsuits was filed in early 2011. On January 13, 2011, the SEC commenced an action against Holley in the U.S. District Court for the State of New Jersey in which it charged him with violating federal securities laws by disclosing material non-public information about the imminent Nipro–HDI merger to six friends, relatives, or employees (the "SEC Action"). The SEC Action, although it was stayed for a substantial period of time, is ongoing.

A contemporaneous criminal investigation by the New Jersey United States Attorney's Office ("NJ USAO") resulted in a grand jury indicting Holley on February 4, 2011, in the U.S. District Court for the State of New Jersey. The government accused Holley of, among other things, orchestrating and executing an insider trading scheme in violation of federal law (the "Criminal Action"). The NJ USAO sought and, on August 19, 2011, obtained a stay of the SEC Action. Early procedural events led to the dismissal of certain counts against Holley in the Criminal Action. At trial, in August 2012, after the government had rested its case and before the defense began its case, the court granted Holley's motion for acquittal on two additional counts of the indictment. Thereafter, Holley and the government reached a plea agreement, pursuant to which Holley agreed to plead guilty to two counts of insider trading in exchange for the government dismissing three other counts, including wire fraud, witness tampering, and obstruction of justice. The judge in the Criminal Action sentenced Holley to probation.

3

On November 19, 2012, Nipro commenced an action against Holley (the "2012 Florida Action") in the U.S. District Court for the Southern District of Florida (the "Florida Court"). In the 2012 Florida Action, Nipro sought, among other relief, to recoup the funds advanced to Holley in connection with the SEC Investigation under theories of breach of contract and unjust enrichment, notwithstanding the fact that the SEC Action was still pending. Nipro argued that Holley was precluded from receiving indemnification, and therefore advancement as well, in defending against the actions taken by the SEC due to the terms of a previously executed indemnification agreement he had with HDI (the "Indemnity Agreement"). Nipro further asserted that keeping the advanced funds would be a violation of Holley's undertaking and, therefore, amount to unjust enrichment.

On May 15, 2013, Holley sought advancement from Nipro relating to the ongoing SEC Action and partial indemnification commensurate with his success in the Criminal Action. An undertaking to repay accompanied his demand letter. Nipro did not provide Holley with any of the requested advancement or indemnification. On June 19, 2013, the Florida Court dismissed the 2012 Florida Action without prejudice for lack of subject matter jurisdiction, apparently based on a pleading error. The Florida Court subsequently denied a motion by Nipro to reopen the 2012 Florida Action. Holley renewed his requests for advancement and indemnification on July 16, 2013.

On April 21, 2014, Nipro filed another action against Holley in the Florida Court (the "2014 Florida Action I"). In that litigation, Nipro reasserted only its claims for breach of contract and unjust enrichment based on Holley's retention of the previously

4

advanced funds. On June 17, 2014, the Florida Court dismissed the 2014 Florida Action I because the civil action form filed with the complaint failed to identify a substantially related, previously filed case—*i.e.*, the 2012 Florida Action.

Not to be deterred, on the same day, June 17, 2014, Nipro filed another action in the Florida Court (the "2014 Florida Action II"), reasserting the same complaint that it had filed in the 2014 Florida Action I. On June 20, 2014, Holley demanded that Nipro advance him the legal fees and expenses he would incur in defending the 2014 Florida Action II. Although Holley had provided the requisite undertaking, Nipro rejected his demand.

### B.      Procedural History of This Case

On May 21, 2014, after the filing of the 2014 Florida Action I, but before it was dismissed, Holley filed his complaint in this action. In that complaint, Holley asserted the right to receive advancement from Nipro for the SEC Action and the 2014 Florida Action I, as well as indemnification for certain fees and expenses he incurred in the Criminal Action and the 2012 Florida Action. On June 20, following the Florida Court's dismissal of the 2014 Florida Action I and Nipro's filing of the 2014 Florida Action II, Holley filed the currently operative Complaint in this action, which was amended to include a claim for indemnification for fees incurred in the 2014 Florida Action I and a claim for advancement for the 2014 Florida Action II.

Minutes before Holley filed his amended Complaint here, Nipro had moved to dismiss or stay this action in favor of the 2014 Florida Action I. Nipro later amended its motion to seek instead to have this action dismissed or stayed in favor of the 2014 Florida

5

Action II. Also on June 20, Holley moved for partial summary judgment on his advancement claims. The parties fully briefed in parallel both Nipro's motion to dismiss or stay and Holley's motion for partial summary judgment.[3] I heard argument on those two motions on August 6, 2014 (the "Argument").

## II. MOTION TO DISMISS OR STAY

### A. Standard of Review

"It has long been held in Delaware that, 'as a general rule, litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing.'"[4] Thus, "[u]nder the [*McWane*] first-filed rule, this Court freely exercises its broad discretion to grant a stay 'when there is [1] a prior action pending elsewhere, [2] in a court capable of doing prompt and complete justice, [3] involving the same parties and the same issues.'"[5]

---

[3] Briefing on the motion to dismiss consists of Defendant's Opening Brief ("Def.'s MTD Br."), Plaintiff's Opposition Brief ("Pl.'s MTD Opp'n"), and Defendant's Reply Brief ("Def.'s MTD Reply"). Briefing on the motion for partial summary judgment consists of Plaintiff's Opening Brief ("Pl.'s SJ Br."), Defendant's Opposition Brief ("Def.'s SJ Opp'n"), and Plaintiff's Reply Brief ("Pl.'s SJ Reply").

[4] *Transamerica Corp. v. Reliance Ins. Co. of Ill.*, 1995 WL 1312656, at *3 (Del. Super. Aug. 30, 1995) (citing *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.,* 263 A.2d 281, 283 (Del. 1970)).

[5] *In re Bear Stearns Cos. S'holder Litig.,* 2008 WL 959992, at *5 (Del. Ch. Apr. 9, 2008) (quoting *McWane*, 263 A.2d at 283).

Under *McWane*, however, the parties and issues need not be identical. "Instead, the courts examine whether the ultimate legal issues to be litigated will be determined in the first-filed action, and thus, repeatedly have held that *McWane* requires only a showing of '[s]ubstantial or functional identity.'"[6] Similar issues are those that arise out of a "common nucleus of operative facts."[7] Likewise, parties are considered substantially the same for purposes of *McWane* "where related entities are involved but not named in both actions," such that the exclusion is "'more a matter of form than substance.'"[8]

Several Court of Chancery cases have granted a stay under *McWane* in a summary proceeding.[9] For summary proceedings, however, there need to be special circumstances

---

[6] *McQuaide v. McQuaide*, 2005 WL 1288523, at *4 (Del. Ch. May 24, 2005) (quoting *AT & T Corp. v. Prime Security Distribs., Inc.,* 1996 WL 633300, at *2 (Del. Ch. Oct. 24, 1996)); *see also Chadwick v. Metro Corp.,* 856 A.2d 1066 (Table), 2004 WL 1874652, at *2 (Del. 2004) ("Under *McWane* and its progeny, a judge, in the exercise of his or her discretion, may stay or dismiss a later-filed suit where a first-filed suit is pending in a court capable of administering prompt and complete justice, and involves substantially similar parties and issues."); *Transamerica Corp.*, 1995 WL 1312656, at *3.

[7] *Schnell v. Porta Sys. Corp.,* 1994 WL 148276, at *4 (Del. Ch. Apr. 12, 1994).

[8] *McQuaide*, 2005 WL 1288523, at *4 (quoting *FWM Corp. v. VKK Corp.,* 1992 WL 87327, at *1 (Del. Ch. Apr. 27, 1992)).

[9] *See, e.g.*, *McElroy v. Schornstein*, 2012 WL 2428343 (Del. Ch. June 20, 2012) (dismissing without prejudice on *McWane* grounds a corporate dissolution action); *Xpress Mgmt., Inc. v. Hot Wings Int'l, Inc.*, 2007 WL 1660741 (Del. Ch. May 30, 2007) (granting stay under *McWane* in order to allow first-filed litigation in Canada to proceed in a dissolution case because the assets of the company were being determined in Canada and the Delaware litigation was just another effort by the plaintiff to try and seize control of the company); *Johnston v. Caremark RX, Inc.*, 2000 WL 354381 (Del. Ch. Mar. 28, 2000) (granting stay of case seeking advancement under an unusual set of facts where the plaintiff first litigated in

7

warranting a stay.[10]  Overall, the Court "must weigh 'the need for swift and expeditious resolution' of these summary proceedings 'against the *McWane* policies of comity and promoting the efficient administration of justice.'"[11]  The present dispute is a summary proceeding for advancement under 8 *Del. C.* § 145.  This context, therefore, warrants the Court considering a fourth factor in its *McWane* analysis, namely: whether a balance of the harms weighs in favor of staying the Delaware action.[12]

---

Alabama and had raised the advancement issue there); *Carvel v. Andreas Hldgs. Corp.*, 698 A.2d 375 (Del. Ch. 1995) (granting stay of case under 8 *Del. C.* § 225 because the dispute over who owned the stock in issue was already before a probate court in New York).

[10]  *See McElroy*, 2012 WL 2428343, at *1 ("Summary statutory proceedings such as this one under [8 *Del. C.*] § 273 obviously require special attention when considering a motion to stay or dismiss under *McWane*.  This court has often considered Delaware to be a more appropriate forum than a foreign court when a component of multi-forum litigation involves a summary proceeding under the [DGCL]."); *Xpress Mgmt.*, 2007 WL 1660741, at *5 ("It is an indisputable proposition that this State has a strong, and often paramount, interest in seeing such disputes [about a Delaware company's internal affairs] resolved in a rapid, orderly, and predictable manner.  Due in large part to this pressing interest, a summary proceeding initiated in the Court of Chancery will often be allowed to proceed despite the pendency in a foreign court of a related prior-filed action between the same litigants.").

[11]  *McElroy*, 2012 WL 2428343, at *1 (quoting *Choice Hotels Int'l, Inc. v. Columbus-Hunt Park Dr. BNK Investors, LLC*, 2009 WL 3335332, at *4 (Del. Ch. Oct. 15, 2009)).

[12]  *Choice Hotels Int'l*, 2009 WL 3335332, at *10-11.

8

## B. Analysis

I address the *McWane* factors in turn. For the reasons stated below, I find that Nipro has not shown that this case should be stayed or dismissed in favor of the 2014 Florida Action II.

### 1. Is the 2014 Florida Action II first-filed?

Nipro filed the 2014 Florida Action II about a month after Holley filed this action in Delaware. Normally, such a time differential conclusively would prevent the 2014 Florida Action II from being considered the first-filed, or even a simultaneously filed, complaint. Nipro emphasizes, however, that the complaints in the 2014 Florida Action I and the 2014 Florida Action II are practically identical. Therefore, it argues, the filing date of the latter should relate back to that of the former, making Nipro's case the first-filed action by nearly a month relative to Holley's initial Delaware complaint.

There is at least some support in Delaware case law for Nipro's position. "[W]here an otherwise first-filed case has been amended or altered, Delaware courts will 'compare[] the substance of the original case to that of the case as later composed,'" and "where the 'substance of the original case remains unchanged,' the court will treat the modified action as if filed on the original date."[13] The two 2014 Florida complaints essentially are identical. An argument can be made, however, that Nipro should not be allowed to claim the mantle of first-filer here because it failed on two previous occasions

---

[13] *Choice Hotels Int'l*, 2009 WL 3335332, at *6 (quoting *McQuaide, Inc.*, 2005 WL 1288523, at *4).

9

to comply with the Florida Court's procedural rules for bringing a case. Nevertheless, I need not determine that issue in this case, because even if I assume that the 2014 Florida Action II qualifies as a first-filed action, Nipro cannot satisfy the other elements of the *McWane* standard.

## 2. Do both actions involve the same parties and issues?

It is undisputed that this litigation and the 2014 Florida Action II involve the same parties. Nipro also contends that the issues in this case and the 2014 Florida Action II arise from a common nucleus of operative fact. Yet, a common underlying factual core, on its own, is not always enough. The issues in the two cases still must be "functionally similar," and that question deserves even "closer inspection" when one of the competing actions is a summary proceeding.[14]

In the 2014 Florida Action II, Nipro in essence asserts claims related to Holley's right to *indemnification* in the ongoing SEC Action. Indeed, that action seeks to recoup the legal fees of Holley previously advanced by Nipro. By contrast, in this action, Holley asserts a right to *advancement* in the SEC Action. In addition, Holley here asserts a number of additional claims that are not at issue in the 2014 Florida Action II, including a claim for advancement in connection with that action, and claims for indemnification of certain fees and expenses he incurred in litigating the Criminal Action, the 2012 Florida Action, and the 2014 Florida Action I.

---

[14] *See id.* at *7.

10

As my ruling on Holley's summary judgment motion demonstrates *infra*, advancement and indemnification are distinct from one another. One difference is that, unlike advancement actions, which are usually expedited, indemnification claims usually do not receive expedited treatment. Consistent with that distinction, I have focused my attention on the pending motions on Holley's advancement claims. His requests for indemnification in this action can be taken up at a later time, if necessary. Thus, I do not consider the advancement issues currently before me in this case to be functionally similar to the issues in the 2014 Florida Action II.

### 3.    Can Holley obtain prompt and complete justice in the Florida Court?

I have no doubt that the Florida Court could render prompt and complete justice as to any claims properly before it. The procedural history of this case, however, casts doubt on whether Holley could obtain prompt and complete justice as to his advancement claims before the Florida Court. For starters, despite Nipro's debatable assertion that Holley's request for advancement is a compulsory counterclaim under the Federal Rules of Civil Procedure, it is clear that Holley's advancement claims were not before the Florida Court as of the Argument in this action.[15] Whether Holley's claims would be compulsory counterclaims before the Florida Court depends on what claims of Nipro, if any, are properly before that court.

Although Nipro has attempted to assert certain claims in the Florida Court for over two years, it appears to have made a number of procedural mistakes in doing so. As a

---

[15]    Arg. Tr. 12.

11

result, Nipro's ability to move forward any claims in the 2014 Florida Action II is open to question. In that regard, I note that, having dismissed Nipro's complaints in the 2012 Florida Action and the 2014 Florida Action I, it is unclear how the Florida Court will respond to Nipro's latest attempt to pursue its claims there. For example, Holley has advanced a colorable argument that the 2014 Florida Action II might be dismissed on ripeness grounds because the SEC Action remains ongoing, which arguably makes Nipro's claims for repayment premature. In sum, Nipro has made a weak showing, at best, that the litigation it is attempting to prosecute before the Florida Court is likely to enable Holley to obtain prompt and complete adjudication of his advancement claims.

### 4. Does the balance of harms favor staying this action?

As previously discussed, the summary nature of a challenged proceeding does not preclude a movant from prevailing on a *McWane* argument. This Court has held, however, that "in all but the most exceptional circumstances, claims under Section 145(k) for advancement of expenses should not be stayed or dismissed in favor of the prior pending foreign litigation that give rise to them."[16] The 2014 Florida Action II gives rise to a portion of Holley's advancement claims. More broadly, this Court's opinion in *Fuisz v. Biovail Technologies* suggests that a defendant must present to the Court a particularly compelling explanation as to why an advancement case ought to be stayed under the *McWane* doctrine. Nipro has not presented such an explanation here.

---

[16] *Fuisz v. Biovail Techs., Ltd.*, 2000 WL 1277369, at *1 (Del. Ch. Sept. 6, 2000).

The advancement claims are raised only tangentially in the 2014 Florida Action II. That is, the only reason Nipro puts forward to negate advancement for Holley is that no indemnification is possible in Holley's situation and, accordingly, under Nipro's reasoning, advancement similarly is precluded. A major part of that argument relies on Nipro's interpretation of Section 4(a) of the Indemnity Agreement. For the reasons discussed in Section III.2 *infra*, regarding Holley's motion for partial summary judgment, I reject that aspect of Nipro's position on the merits. Therefore, Holley's right to the summary adjudication of his advancement claims in this action outweighs Nipro's desire to avoid having to litigate outside of Florida.

In sum, Nipro failed to meet its burden of showing that the *McWane* factors support staying or dismissing this case. At best, only one of the four *McWane* factors weighs in Nipro's favor. Accordingly, I exercise my discretion to deny Nipro's motion to dismiss or stay.

## III. MOTION FOR PARTIAL SUMMARY JUDGMENT

Holley seeks partial summary judgment on his requests for advancement of legal fees and expenses incurred in the SEC Action and the 2014 Florida Action II as well as his fees and expenses related to pursuing those requests in this action—*i.e.*, his fees on fees. Holley's motion is not directed to the indemnification disputes between the parties; therefore, those claims will be the subject of future proceedings.

### A. Standard of Review

"Summary judgment is granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no

13

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[17] When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[18] Summary judgment will be denied when the legal question presented needs to be assessed in the "more highly textured factual setting of a trial."[19] The Court "maintains the discretion to deny summary judgment if it decides that a more thorough development of the record would clarify the law or its application."[20] "Advancement cases are particularly appropriate for resolution on a paper record, as they principally involve the question of whether claims pled in a complaint against a party . . . trigger a right to advancement under the terms of a corporate instrument."[21]

## B. Analysis

Delaware law permits, and in some cases requires, corporations to indemnify their directors and officers for legal fees incurred in defending certain actions.[22] Advancement

---

[17] *Twin Bridges Ltd. P'ship v. Draper*, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c)).

[18] *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).

[19] *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 n.3 (Del. Ch. 1987) (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 257 (1948)).

[20] *Tunnell v. Stokley*, 2006 WL 452780, at *2 (Del. Ch. Feb. 15, 2006) (quoting *Cooke v. Oolie,* 2000 WL 710199, at *11 (Del. Ch. May 24, 2000)).

[21] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *6 (Del. Ch. Jan. 23, 2006).

[22] 8 *Del. C.* § 145(a)-(c).

is purely permissive; no Delaware corporation is required to advance any legal fees.[23]

Many corporations, however, provide for mandatory advancement as an enticement to attract qualified individuals to serve as directors and officers. Holley's rights to advancement derive from an Indemnity Agreement and HDI's Certificate of Incorporation.[24] The Certificate of Incorporation states, in relevant part:

> [T]he Corporation shall indemnify, to the fullest extent permitted under the General Corporation Law of the State of Delaware, any person who was, is or is threatened to be made a party to a proceeding by reason of the fact he or she . . . was a director or officer of the corporation at any time prior to the date of the filing of this certificate of incorporation . . . . Such right shall include the right to be paid by the corporation expenses (including attorneys' fees) incurred in defending any such proceeding in advance of its final disposition to the maximum extent permitted under the General Corporation Law of the State of Delaware.[25]

The Indemnity Agreement includes a provision stating that the Company will, subject to certain limits discussed *infra*, indemnify Holley:

> against any and all costs and expenses . . . witness fees, damages, judgments, fines and amounts paid in settlement and any other amounts that [Holley] becomes legally

---

[23] 8 *Del. C.* § 145(e) ("Expenses (including attorneys' fees) incurred by an officer or director of the corporation in defending any civil, criminal, administrative or investigative action, suit or proceeding *may be paid by the corporation in advance* of the final disposition of such action, suit or proceeding . . . .") (emphasis added).

[24] The Amended and Restated Certificate of Incorporation of Home Diagnostics, Inc. and the Indemnity Agreement were attached as Exhibits A and B, respectively, to Holley's initial Verified Complaint (hereinafter "Certificate of Incorporation" and "Indemnity Agreement").

[25] Certificate of Incorporation Art. 8.

15

> obligated to pay because of any claim or claims made against him in connection with any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, arbitrational, administrative or investigative . . . to which [Holley] was or at any time becomes a party, or is threatened to be made a party, by reason of the fact that [Holley] is, was or at any time becomes a director, officer, employee or other agent of the corporation . . . ."[26]

The Indemnity Agreement later provides that: "The Corporation shall advance, prior to the final disposition of any action, suit or proceeding . . . all costs and expenses . . . incurred by [Holley] in connection with such action, suit or proceeding," conditioned only "upon receipt of an undertaking by or on behalf of [Holley] to repay said amounts if it shall be determined ultimately that [Holley] is not entitled to be indemnified . . . ."[27] Both the Certificate of Incorporation and the Indemnity Agreement thus provide for broad mandatory advancement rights.

Nipro advances three main arguments against Holley's advancement requests. First, Nipro contends that Holley was not made a party to the SEC Action "by reason of the fact" he was an officer or director of HDI. At the very least, Nipro maintains, this is a factual question precluding summary judgment. Second, Nipro argues that the Indemnity Agreement between the parties precludes any indemnification for claims of insider trading. Based on that premise, Nipro avers that it would be impossible for Holley to be indemnified for the claims for which he seeks advancement in this action and, therefore,

---

[26]    Indemnity Agreement § 3(a).

[27]    *Id.* § 8.

16

that he is not entitled to advancement for those claims either. Third, Nipro maintains that Holley's undertaking in relation to the SEC Investigation did not carry forward into the SEC Action. Nipro also contends that any attempt by Holley now to provide the undertaking required for advancement as to the SEC Action would be barred by laches. I address these arguments in turn. Sections III.1–III.4 *infra* concern the SEC Action, to which Nipro devoted the vast majority of its briefing. Section III.5 resolves the advancement request for the 2014 Florida Action II.

### 1. Was Holley made a party to the SEC Action "by reason of the fact" that he was an officer or director of HDI?

In accordance with 8 *Del C.* § 145, both the Indemnity Agreement and the Company's Certificate of Incorporation limit advancement to those cases where Holley was made a party to a lawsuit "by reason of the fact" that he is or was a director or officer of the Company.[28] Nipro contends that Holley cannot meet that requirement and therefore is not entitled to advancement.

At the outset, Nipro argues that whether Holley was made a party to the SEC Action "by reason of the fact" he was a director is a factual issue that precludes summary judgment. I disagree. Advancement is a summary proceeding focused on determining whether the claims asserted against an officer or director fall within the category of claims that the corporation agreed to advance. Accordingly, in this case, the "by reason

---

[28] Certificate of Incorporation Art. 8; Indemnity Agreement § 3.

17

of the fact" analysis requires looking to the allegations in the SEC's complaint.[29] In that regard, I note that courts often can determine whether the "by the reason of the fact" requirement has been satisfied solely by examining the pleadings in the underlying litigation, notwithstanding opposition from the defendant company.[30] From this perspective, Nipro's argument that Holley's situation is no different than that of a janitor who could have overheard inside information about the merger and then committed securities law violations is unpersuasive. The SEC Complaint undeniably focuses on Holley's position as chairman, including the breadth and depth of inside information to which he had access as a result of his position.[31] The allegations in the SEC Complaint,

---

[29] A copy of the complaint in the SEC Action is attached as Exhibit D to Holley's initial Verified Complaint (hereinafter "SEC Complaint").

[30] *See, e.g.*, *Homestore, Inc. v. Tafeen*, 888 A.3d 204, 214 (Del. 2005) ("The limited and narrow focus of an advancement proceeding precludes litigation of the merits of entitlement to indemnification for defending one self in the underlying proceedings. If it is subsequently determined that a corporate official is not entitled to indemnification, he or she will have to repay the funds advanced."); *Brown v. LiveOps, Inc.*, 903 A.2d 324, 330 (Del. Ch. 2006) ("[I]t is apparent from the face of the complaint . . . that the claims asserted against [plaintiff] arise 'by reason of the fact' that he was a director or officer of [the company].").

[31] *E.g.*, SEC Compl. ¶ 1 ("Although Holley owed a fiduciary duty to HDI and its shareholders to maintain the confidence of the insider information, he nevertheless provided the information to others with the intent that they purchase HDI stock on the basis of his tips."); *id.* ¶¶ 15-23 (describing Holley's access to the relevant information as coming from his position as chairman and participation in numerous high-level board meetings and negotiations regarding the HDI-Nipro merger); *id.* ¶ 23 ("Holley knew, or was reckless in not knowing, that as Chairman of the Board of Directors of HDI, he had a fiduciary duty to maintain the confidentiality of all material, nonpublic information that he received relating to HDI."); *id.* ¶¶ 27, 31, 40, 42, 44, 47, 53 (alleging that Holley breached his

18

therefore, strongly support the conclusion that the "by reason of the fact" requirement is satisfied in this case.

Nipro further contends that Holley committed the wrongs for which he was accused in a personal capacity, not in a corporate capacity, making his official corporate title beside the point. For a lawsuit to be brought "by reason of the fact" that the defendant was an officer or director, there must be "a nexus or causal connection between any of the underlying proceedings . . . and one's corporate capacity."[32] Citing this Court's decision in *Paolino v. Mace Security International, Inc.*, Nipro asserts that the "by reason of the fact" element requires some use of corporate power to engage in the alleged wrongs.[33] According to Nipro, the wrongs Holley committed did not involve any such use of corporate power.

Admittedly, certain suits between a corporation and its directors or officers do involve solely personal, and not corporate, obligations, such that the "by reason of the fact" requirement is not satisfied.[34] This category of cases, however, is not as broad as

---

fiduciary duties by providing material, nonpublic information to others with the intent that they trade on that confidential information).

[32]   *Homestore*, 888 A.3d at 214.

[33]   *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 403 (Del. Ch. 2009) ("Section 145 will not apply when the parties are litigating a specific and personal contractual obligation that does not involve the exercise of judgment, discretion, or decision-making authority on behalf of the corporation.").

[34]   *See Cochran v. Stifel Fin. Corp.*, 2000 WL 1847676, at *6 (Del. Ch. Dec. 13, 2000) (denying portion of indemnification claim for fees incurred in arbitration in

Nipro suggests.[35]  In advancement cases, the line between being sued in one's personal capacity and one's corporate capacity generally is drawn in favor of advancement with disputes as to the ultimate entitlement to retain the advanced funds being resolved later at the indemnification stage.

As to the corporate capacity nexus, the "requisite connection is established 'if the corporate powers were used or necessary for the commission of the alleged misconduct.'"[36]  Notwithstanding Nipro's assertion that no "corporate power" was necessary for Holley to commit the insider trading violations of which he has been accused, the relevant case law indicates otherwise.  "This Court has held previously that where the claims asserted against a defendant in an action are based on the misuse of confidential information that the defendant learned in his or her official corporate capacity, that action qualifies as being asserted 'by reason of' that corporate capacity."[37]

---

which employee was ordered to return excessive compensation amounts and repay a loan to the company), *aff'd in part, rev'd in part*, 809 A.2d 555 (Del. 2002).

[35] Indeed, the Court in *Paolino* explicitly observed that defendant corporations were misreading cases like *Cochran* in an often unproductive effort to avoid paying the mandatory advancement and indemnification to which they previously agreed. *Paolino*, 985 A.2d at 404-07.

[36] *Id.* at 406 (quoting *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007)).

[37] *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1052 (Del. Ch. 2014); *see also Brown*, 903 A.2d at 330 ("The gravamen of the underlying complaint is that [the plaintiff] had access to proprietary information by reason of the fact that he was a director and officer of [the company] and that he wrongly used that information for his personal benefit."); *Scharf v. Edgcomb Corp.*, 2004 WL 718923, at *4 (Del. Ch. Mar. 24) ("An essential component to [the plaintiff's] potential insider

20

Recognizing that these cases generally favor granting Holley advancement, Nipro attempts to distinguish them by arguing that the facts of this case essentially are *sui generis*. Nipro points out, for example, that Holley personally derived no monetary benefit from the alleged insider trading here. Instead, he communicated the inside information to some of his family and friends. Even if that is true, however, Holley obtained a personal benefit in terms of the gratification he received as a result of his allegedly illegal beneficence. But, Nipro's principal counterargument is that the Indemnity Agreement prohibits indemnification relating to violations of the federal securities laws, or even claims of such violations, and that Holley has pled guilty to insider trading. Those arguments are addressed in the next subsection. Otherwise, based on the allegations in the SEC Complaint and the consistent position of Delaware case law on this issue, I conclude that Holley is a party to the SEC Action "by reason of the fact" that he served as a director of HDI.

---

trading liability was his access to [the company's] nonpublic information, and he acquired that information 'by reason of the fact' that he was a corporate officer and director."), *rev'd on other grounds*, 864 A.2d 909 (Del. 2004); *Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *7 (Del. Ch. May 3, 2002) ("The inquiry, in these circumstances, is into whether the criminal scheme is alleged to have employed the corporate powers (or, for example, confidential inside information acquired through corporate status) conferred upon the officer by virtue of his status."). The same reasoning held true in the bygone era when the Superior Court adjudicated corporate indemnification cases. *Merritt-Chapman & Scott Corp. v. Wolfson*, 321 A.2d 138, 142 (Del. Super. 1974) ("The charge [under Rule 10b-5] was based upon failure to disclose inside information. [The plaintiff] participated in the plan, shared the inside information, and was prosecuted because of his employment or agency relationship with [the company].").

21

## 2. Does the Indemnity Agreement preclude indemnification and, therefore, advancement for the claims asserted in the SEC Action?

Nipro's primary argument is that there can be no advancement where indemnification is impossible. Citing *Paolino*, among other cases, Nipro contends that advancement is only permissible in cases "in which indemnification theoretically could be available."[38] The Delaware Supreme Court, however, has held that indemnification and advancement "are separate and distinct legal actions" and that the "right to advancement is not dependent on the right to indemnification."[39] Indeed, Nipro's position that advancement necessarily is limited to situations that could qualify for indemnification appears to be wrong as a matter of law.[40] Even assuming Nipro's premise is correct, however, the Company still would be required to advance Holley's fees in the SEC Action.

Nipro focuses on a carve out in the Indemnification Agreement (the "Carve Out"), which provides that:

> No indemnity pursuant to Section 2 or 3 hereof shall be paid by the Corporation . . . on account of any claim against [Holley] for an accounting of profits made from the purchase or sale by [Holley] of securities of the Corporation pursuant to the provisions of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto (the "Exchange Act"),

---

[38] *Paolino*, 985 A.2d at 398.

[39] *Homestore*, 888 A.2d at 212.

[40] *Id.* at 212-13 ("Section 145(e), however, expressly contemplates that corporations may confer a right to advancement that is *greater* than the right to indemnification and recognizes that advances must be repaid if it is ultimately determined that the corporate official is not entitled to be indemnified.").

22

or any violation of any federal, state, or foreign statutory laws or regulations prescribing [sic] insider trading or similar provisions of any federal, state, local or foreign law.[41]

Nipro raises two distinct arguments pertaining to the Carve Out. First, Nipro reads the Carve Out broadly to preclude indemnification as to any claims against Holley for a violation of the insider trading laws. Holley disputes that interpretation. And second, according to Nipro, because Holley pled guilty to insider trading, he has committed a proscribed act under the terms of the Carve Out, even as construed by Holley, and is not entitled to indemnification. Nipro further argues that because Holley cannot qualify for indemnification, the Company has no current obligation to advance him any fees.

### a.      The proper construction of the Carve Out

Nipro's arguments suffer from several shortcomings. First and foremost, Nipro's textual position is flawed. Nipro interprets the Carve Out as precluding indemnification "on account of any claim against [Holley] for . . . any violation of" insider trading laws, whether or not he committed the alleged wrong. Holley advances a different construction of this provision. In terms of what is relevant to this case, Holley construes the Carve Out as precluding indemnification for costs and expenses incurred "on account of . . . any violation of" insider trading laws. Under Holley's view, Section 4(a) of the Indemnity Agreement prohibits indemnification in two separate situations: (1) an accounting action under Section 16(b) of the Exchange Act; and (2) violations of insider trading laws.

---

[41]      Indemnity Agreement § 4(a).

23

Because Holley has moved for summary judgment and the parties disagree as to the meaning of the Indemnity Agreement, I first must decide whether Section 4(a) is ambiguous. If it is, this dispute probably cannot be decided on summary judgment.[42] Just because the parties to a contract interpret a particular provision differently does not mean necessarily that the provision is ambiguous. "Ambiguity exists 'when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.' Ambiguity does not exist, however, simply because the parties disagree about what the contract means."[43] Thus, I must examine each party's proposed interpretation of Section 4(a) to determine whether it is reasonable.

Holley convincingly argues that Nipro's interpretation would result in an indemnification provision that is contrary to the Delaware General Corporation Law ("DGCL"). Under the DGCL, indemnification of officers and directors of a corporation is *mandatory* to the extent that the officer or director is successful. Specifically, Section 145(c) states:

> To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person *shall be*

---

[42]  *2009 Caiola Family Trust v. Dunes Point West Assocs., LLC*, 2014 WL 1813174, at *7 (Del. Ch. Apr. 30, 2014).

[43]  *Id.* (quoting *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992)).

> *indemnified* against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.[44]

Under Nipro's interpretation of the Indemnity Agreement, the Company could not indemnify any *claim*, however meritless, of insider trading. Thus, if the government filed a patently frivolous lawsuit against Holley and Holley prevailed in having the case dismissed, the Company would have no obligation to indemnify him, despite his success. Under this scenario, Section 4(a) would violate 8 *Del. C.* § 145(c). Indeed, such an interpretation of Section 4(a) would render it void and, therefore, would be unreasonable as a matter of law.[45] Accordingly, I find that the Carve Out is not ambiguous and interpret its final clause to preclude indemnification only for *violations* of insider trading laws.[46]

This position is bolstered by the other provisions of the Indemnity Agreement. Aside from the Carve Out, the Indemnity Agreement provides indemnity "to the fullest extent as may be provided to [Holley] by the Corporation under Delaware Law, the

---

[44]  8 *Del. C.* § 145(c) (emphasis added).

[45]  *Paolino*, 985 A.2d at 403 ("A bylaw provision that conflicts with a mandatory provision of the General Corporation law . . . is *ultra vires* and void . . . . I will not read the carve-out in a way that would render it invalid.").

[46]  This interpretation comports with Nipro's own conduct. Nipro initially advanced Holley's fees in connection with the SEC Investigation. The 2014 Florida Action II seeks repayment of those fees on the grounds that Holley was not entitled to them because he pled guilty to insider trading. But, if the Indemnity Agreement prevents Nipro from advancing fees in any situation where insider trading is even *claimed*, as Nipro now suggests, one would have expected Nipro to have refused to advance Holley the fees for the SEC Investigation in the first place.

Certificate [of Incorporation] and the Bylaws."[47]  Such provisions are relatively

common.[48]  In my view, only Holley's proposed construction of the Carve Out comports

with the Indemnity Agreement's explicit instruction for making advancement and

indemnification available to the fullest extent allowed by Delaware law.

In sum, I find Nipro's interpretation of the Carve Out to be unreasonable.  Thus,

the only reasonable interpretation of the Indemnity Agreement presented by the parties

that conforms to the language of the Carve Out is that it prohibits indemnification for

actual insider trading violations, but not for all claimed or alleged insider trading

violations.[49]  Adopting that construction of the Indemnity Agreement, I still must

---

[47]     Indemnity Agreement § 3(b).

[48]     *E.g.*, *Brown*, 903 A.2d at 328 (quoting a nearly identical provision and interpreting it to "provide for mandatory advancement to the broadest extent possible under Delaware law").

[49]     Indeed, a reasonable argument can be made that the Indemnity Agreement requires advancement without consideration of the Carve Out.  The advancement clause contains no restrictions and requires the Company to advance "all costs and expenses . . . incurred by [Holley] in connection with such action, suit or proceeding."  Indemnity Agreement § 8.  As noted, advancement and indemnification are distinct under Delaware law and it would not be inconceivable for the Indemnity Agreement to provide broader advancement rights than indemnification rights.  If the Carve Out affects the Company's advancement obligation at all, then, textually, it only could be by modifying the phrase "such action, suit or proceeding."  None of those terms, however, appear in the Carve Out.  Instead, that phrase appears to be referencing Section 3 of the Indemnity Agreement, which provides for extending indemnification rights as broadly as allowed under Delaware law.  *Id.* § 3; *see also id.* § 6 (" . . . in connection with any action, suit or proceeding *referred to in* Section 2 or 3 hereof . . . .") (emphasis added).  The language "action, suit or proceeding" originally derives from the DGCL: "A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed

26

consider the effect, if any, of Holley's guilty plea on his claim for advancement for the SEC Action and for the other matters before me.

### b. The effect of Holley's guilty plea on his claims for advancement

Nipro views Holley's guilty plea in the Criminal Action as conclusive on the question of whether he may be entitled to indemnification in the SEC Action. Under the interpretation of the Indemnity Agreement I adopted above, however, it is not a foregone conclusion that Holley will need to repay any funds advanced in the SEC Action. Despite his guilty plea, there are many ways in which Holley could be "successful on the merits or otherwise."[50] I focus first on the language "or otherwise." As used in reference to litigation, the term "successful" bears no necessary connection to the term "not guilty." The SEC could terminate the SEC Action, for example, for any number of reasons, including a reprioritization of limited resources. Similarly, Holley could prevail on procedural grounds. Thus, I find that Holley could otherwise "succeed" in the SEC Action, within the meaning of Section 145(c), despite his guilty plea.[51]

---

*action, suit or proceeding*, whether civil, criminal, administrative or investigative . . . ." 8 *Del. C.* § 145(a) (emphasis added). For purposes of the pending motion, however, I need not decide that issue. Rather, I assume *arguendo* that the Carve Out is relevant to construction of the Indemnity Agreement's advancement provision, and I have construed it as Holley proposes.

[50] 8 *Del. C.* § 145(c).

[51] *See Perconti*, 2002 WL 982419, at *7-8 (describing situation where plaintiff prevailed under 8 *Del. C.* § 145(c) when the United States Attorney dismissed all charges following a mistrial caused by a hung jury, despite the fact the plaintiff's co-executive pled guilty to all charges); *Merrit-Chapman & Scott Corp. v. Wolfson*, 321 A.2d 138, 141 (Del. Super. 1974) (awarding partial indemnification

27

Additionally, Holley need not be completely successful; the Indemnity Agreement permits partial indemnification.[52] The guilty plea only covered two instances of insider trading involving up to three individuals.[53] The SEC Action, however, involves six tippees, at least three of whom were not covered by the guilty pleas.[54] Holley, therefore, conceivably could succeed on the merits as to those aspects of the SEC Action.

Based on the foregoing, I conclude that it is possible that Holley eventually could receive indemnification in the SEC Action. Thus, even assuming that Nipro's advancement obligations are limited to theoretically indemnifiable situations, the Indemnification Agreement requires Nipro to advance Holley's fees. Any fees or expenses later found to have been advanced for matters as to which Holley is not entitled to indemnification can be recouped at the indemnification stage.

### 3. Did Holley provide Nipro with a sufficient undertaking to repay any advancement to which he was not entitled?

Nipro unconvincingly argues that Holley cannot receive advancement in the SEC Action because his undertaking was insufficient. It is undisputed that Holley submitted an undertaking in connection with the SEC Investigation. Nipro reads that undertaking,

---

after plaintiffs were convicted by jury on the second retrial on some, but not all, counts alleging an insider trading scheme).

[52] Indemnity Agreement § 6.

[53] Compl. ¶¶ 27, 32-33.

[54] SEC Complaint ¶¶ 40-51.

28

however, as covering only the SEC Investigation and not the subsequent SEC Action. I reject this argument as illogical and contrary to precedent.

Our case law has recognized that complex litigation contains many related stages. In *Sun-Times Media Group, Inc. v. Black*,[55] then-Vice Chancellor, now-Chief Justice Strine determined the meaning of the phrase "the final disposition of such action, suit or proceeding" in Section 145(e) of the DGCL. A virtually identical phrase appears in the Indemnity Agreement's advancement clause.[56] The corporation in *Sun-Times* contended that its advancement obligations terminated after a jury verdict was returned in a criminal trial; the former officers argued that the corporation owed them advancement through a final appeal. Noting the parallel language in Section 145(e) and the corporation's indemnification bylaw, as well as a bylaw stating that advancement would be available to the "fullest extent permitted by applicable law," the Court determined that the dispute between the parties was really about the scope of Section 145(e). Honing in on the term "final disposition," the Court analyzed relevant precedent, Black's Law Dictionary, and the policies underlying advancement. Against this backdrop, the Court concluded that "an action, suit or proceeding refers to a discrete administrative or judicial matter involving a particular subject and encompasses all its stages, and that the final disposition

---

[55] 954 A.2d 380 (Del. Ch. 2008).

[56] Indemnity Agreement § 8 (" . . . the final disposition of any action, suit or proceeding . . . .").

29

of such an action, suit or proceeding occurs when its outcome is no longer subject to any further review as of right."[57]

Nipro's position runs contrary to *Sun-Times*. The SEC Action is a continuation of the SEC Investigation. Like most serious litigation efforts, an investigation of the potential merits preceded the filing of the SEC Action. Nipro's averment that SEC procedures differ so substantially from normal civil litigation that they warrant requiring separate undertakings for the SEC Investigation and the SEC Action is unpersuasive. Additionally, I note that adopting Nipro's position would produce uncertainty and engender an increase in advancement litigation over when and how many undertakings an officer or director must supply for the same overall proceeding. Based on the reasoning of *Sun-Times*, which Nipro neglected to cite in the portion of its brief relevant to this argument (but which it did cite elsewhere), I reject Nipro's challenge to the adequacy of Holley's undertaking.

### 4. Does either laches or public policy preclude Holley from receiving advancement?

Nipro rather weakly asserts a laches argument, suggesting that Holley's demand for advancement comes too late and that Nipro has been prejudiced by the delay. Besides being insufficiently briefed and argued, the procedural history of Holley's litigation odyssey provides a cogent explanation as to why Holley is just now seeking advancement for the SEC Action which was originally filed January 13, 2011. Nipro *did* advance

---

[57] *Sun-Times*, 954 A.2d at 396.

Holley's fees during the SEC Investigation until November 2010. Not long after the SEC filed the complaint initiating the SEC Action in January 2011, that matter was stayed so the Criminal Action could proceed. Holley's counsel represented at oral argument that the SEC Action was in the earliest procedural phases and only recently had required the expenditure of time and money.[58] Accordingly, there was no need for Holley to seek advancement for the SEC Action much before May 2014, when he filed this action, because there was no need for Holley's attorneys to devote time to that case until recently.[59]

Finally, Nipro argues that allowing Holley to obtain advancement in the circumstances of this case would violate public policy. Nipro grounds its argument on the DGCL's prohibition against indemnifying "a party who did not act in good faith or in the best interests of the corporation."[60] Relying on Holley's guilty plea and the accompanying plea colloquy, Nipro asserts that it has been established conclusively that Holley acted willfully and not in the best interests of the Company. Nipro's exasperation at the prospect of continuing to pay Holley's fees, given the facts of this case, is understandable. Unfortunately for Nipro, however, its argument is inconsistent with the rights granted to its directors under the DGCL.

---

[58] Arg. Tr. 21-22 (counsel for Holley).

[59] Holley's Complaint also seeks advancement as to the 2014 Florida Action II, but the timeliness of his Complaint cannot seriously be questioned in that regard.

[60] 8 *Del. C.* § 145(a).

31

The simple answer to Nipro's argument is that indemnification and advancement are separate issues. If the SEC pursues its case against Holley and triumphs, then the state-of-mind limitations of 8 *Del. C.* § 145(a) will come into play. But if Holley succeeds, on the merits or otherwise, he will not have to repay the money initially advanced. DGCL § 145(c) does not have a state-of-mind limitation. As demonstrated by subsection (a) of Section 145, the Legislature knew how to add a requirement, when it so intended, that the director or officer must have acted in the corporation's best interests. The absence of such a requirement in subsection (c), therefore, can only be viewed as deliberate. Requiring a "corporate officer seeking indemnification under Section 145(c) to demonstrate that he pursued his course of conduct for the benefit of the corporation . . . would limit the rights clearly conferred by Section 145(c) in a manner that was not (but could have been) included in the legislative standard."[61]

Finally, in terms of public policy, I note that this Memorandum Opinion concerns only Holley's right to advancement. At the indemnification stage, he may be required to repay Nipro some or all of the money advanced. As to the motion presently before me, however, neither the DGCL nor any relevant precedent suggests that advancing Holley's fees would violate the public policy of this State.

### 5.    Is Holley entitled to advancement for the 2014 Florida Action II?

Holley also has moved for summary judgment on his claim for advancement as to the 2014 Florida Action II. Nipro spent minimal time in its briefing contesting Holley's

---

[61]    *Perconti*, 2002 WL 982419, at *4.

right to advancement for that action. The 2014 Florida Action II stems from the advancements of attorneys' fees Nipro made during the SEC Investigation. Nipro now claims that Holley was not entitled to that money and wants it back. Holley denies Nipro's claims. Based on the record before me, I find that the 2014 Florida Action II is an advanceable proceeding. Holley is defending a suit brought to recover previously advanced funds. Nipro advanced those funds to Holley in the first place because it presumably concluded he had a right to them as HDI's chairman. Furthermore, Holley's obligation to return those funds, if any, arises from the fact that, as HDI's chairman, he was a party to the Indemnity Agreement.

Nipro's apparent defense to Holley's advancement claim in this regard is that, if I adopt its broad interpretation of the Carve Out in Section 4 of the Indemnity Agreement, then I also should find that Nipro's suit against Holley in the 2014 Florida Action II relates to Holley's insider trading scheme and, therefore, does not qualify for advancement. For the reasons discussed in Section III.B.2 *supra*, however, I rejected Nipro's interpretation of the Indemnity Agreement. In addition, Holley executed a proper undertaking for the 2014 Florida Action II. I find, therefore, that Holley's defense of that proceeding is advanceable. Thus, I conclude that Holley also is entitled to advancement for his reasonable fees and expenses incurred in defense of the 2014 Florida Action II.

## IV. FEES ON FEES

Under the Indemnity Agreement, if the Company fails to pay a proper request for advancement or indemnification, Holley can sue. That agreement further provides that Holley, "in such enforcement action, if successful in whole or in part, shall be entitled to

33

be paid also the expense of prosecuting his claim."[62]  Pursuant to DGCL § 145, however, this Court "will 'only award that amount of fees that is reasonable in relation to the results obtained.'"[63]  Here, that calculation is simple: Holley succeeded in defeating a motion to dismiss or stay and succeeded in establishing on a motion for partial summary judgment his right to advancement in the SEC Action and the 2014 Florida Action II. These were the only subjects of this Memorandum Opinion.  Accordingly, Holley prevailed on every issue currently before the Court.  Thus, Holley is entitled to 100% of the reasonable "fees on fees" he incurred in this advancement proceeding with respect to his claims for advancement, including his opposition to Nipro's motion to dismiss or stay this action.[64]

## V.    CONCLUSION

For the foregoing reasons, I hold as follows: (1) Nipro's motion to dismiss or stay is denied; (2) Holley's motion for partial summary judgment on his advancement claims as to the SEC Action and the 2014 Florida Action II is granted; and (3) Holley is entitled to 100% of his fees on fees to date in pursuing his claims for advancement in this action.

**IT IS SO ORDERED.**

---

[62]    Indemnity Agreement § 9.

[63]    *Pontone*, 100 A.3d at 1058 (quoting *Schoon v. Troy Corp.*, 948 A.2d 1157, 1176 (Del. Ch. 2008)).

[64]    This ruling, however, does not apply to, and is without prejudice to, Holley's claims in this action for indemnification.

34