Agnes CARVEL and Pamela
Carvel, Plaintiffs,

v.

ANDREAS HOLDINGS CORP.,
a Delaware corporation and
Betty Godley, Defendants.

Civil Action No. 14520.

Court of Chancery of Delaware,
New Castle County.

Submitted: Oct. 6, 1995.
Decided: Oct. 24, 1995.

Thomas P. Preston, and Robert J. Valihura, Jr., Duane, Morris & Heckscher, Wilmington, for Plaintiffs.

Kenneth J. Nachbar, and William M. Lafferty, Morris, Nichols, Arsht & Tunnell, Wilmington, and Warren Whitfield Wells, P.C., White Plains, New York, for Defendants.

## OPINION

JACOBS, Vice Chancellor

Pending is a motion by the defendants, Andreas Holdings Corp. ("Andreas") and Betty Godley ("Godley"), to stay this action.

In this proceeding, brought pursuant to 8 *Del. C.* § 225, the plaintiffs, Agnes and Pamela Carvel, ask this Court to declare that: (i) Agnes Carvel ("Agnes") is the sole stockholder of Andreas and entitled to vote all of its shares, (ii) Agnes remains the President of Andreas, and Pamela Carvel ("Pamela") remains Andreas' Vice President and Secretary, and that (iii) actions taken at a purported stockholders' meeting of Andreas on May 2, 1995, in which the plaintiffs were ousted as officers of Andreas and defendant Godley was elected a director and officer, are void and of no effect.

Both sides agree that the critical issue in this case is whether the owner of the Andreas stock is Agnes or the Estate of her deceased husband, Thomas Carvel. That issue, defendants argue, is presently before the Surrogate's Court in Westchester County, New York (the "New York Court"), which has administered Thomas Carvel's Estate since 1991 and will decide the stock ownership question sometime after February 1996. Defendants argue that the New York Court has previously asserted jurisdiction over Andreas by issuing an Order providing for its interim governance, and that only the New

York Court can definitively determine the ownership of the Andreas stock, for purposes of establishing whether the stock is an asset of the Estate. Therefore, defendants conclude, the policies favoring comity and the efficient administration of justice dictate that the New York Court—and not this Court—determine that stock ownership issue.

For the reasons next discussed, I conclude that the motion is well founded and should be granted.

### I.

Before addressing the motion, a recital of certain background facts and events is required. Except where noted, those facts are not in dispute.

Until his death in 1990, Thomas Carvel was (and Mrs. Carvel still is) a resident of New York. Before 1988, Mr. and Mrs. Carvel jointly owned the stock of two corporations, Carvel Corporation and Chain Locations, Inc. ("Chain Locations"). Under a revised estate plan agreed to in February 1988, the stock of Carvel Corporation was transferred of record into the sole name of Thomas Carvel, who sold that stock to a third party in 1989. As part of that transaction, Thomas Carvel repurchased a subsidiary of Carvel Corporation known as All American Sport City, Inc. In the fall of 1989, Mr. Carvel formed a new Delaware corporation known as CCCC Holdings Corp. and contributed to it his All American Sport City, Inc. stock. In 1990, CCCC Holdings Corp. merged with All American Sports City, Inc. and certain other companies that Mr. Carvel owned. As part of that merger, CCCC Holdings Corp. changed its name to Andreas Holdings Corp.

Thomas Carvel died in 1990. Under the terms of his Will, Agnes and Pamela Carvel, Betty Godley, Robert Davis, Mildred Arcadipane, Herbert Roth, and Anthony J. Cerrato became the co-Executors of Mr. Carvel's Estate under the supervision of the New York Court. From their appointment in February 1991 until mid-1994, all the co-Executors confirmed in publicly-filed documents that the Estate owned all of the stock of both Andreas and Chain Locations.

Until May 1995, Agnes and Pamela Carvel served as officers and directors of both Andreas and Chain Locations. The other director was defendant Godley, one of the co-Executors of the Estate. In April 1994, the co-Executors other than Agnes and Pamela filed accountings with the New York Court, representing that the Estate owned all of the stock of Andreas and of Chain Locations. In response, Pamela and Agnes filed formal exceptions to those accountings, claiming for the first time that Agnes owned 50% of the stock of Chain Locations. That claim was amended in January 1995 to assert that Agnes owned 93.5% of the outstanding stock of Chain Locations.

From that point forward, the co-Executors became embroiled in an acrimonious legal dispute involving the Estate, the co-Executors, Chain Locations, and Andreas. In October 1994, Agnes and Pamela Carvel petitioned the New York Court for a decree revoking the letters testamentary and letters of trusteeship of co-Executors Robert Davis and Mildred Arcadipane. That petition charged Davis and Arcadipane with self-dealing and breaches of fiduciary duty as Executors of the Estate and of the Carvel Foundation.

Thereafter (according to affidavits filed by the defendants), in November 1994 and January 1995, Pamela, in her capacity as an officer of Chain Locations and Andreas, caused Chain Locations to pay approximately $2 million to Agnes, who then transferred those monies to a London, England bank. In February 1995, Pamela (again, in her officer capacity) caused Andreas to confess judgment for over $4.1 million in favor of Chain Locations.

After the remaining co-Executors learned of these acts, they called a stockholders meeting of Andreas on May 2, 1995. At that meeting the co-Executors voted, on behalf of the Estate as Andreas' purported sole stockholder, to remove Agnes and Pamela as directors of Andreas. Based in part upon that vote, the New York Court entered an interim Order on July 5, 1995 suspending Agnes' power to act as an Executor of the Estate, suspending Pamela's and Agnes' powers to act as directors or signatories of Chain Loca-

tions and Andreas, and directing Pamela to turn over to Godley all books and records in her possession relating to those corporations.

The New York Court scheduled a final hearing on the subject of that interim order, namely, whether Pamela and Agnes Carvel should be permitted to serve as officers and directors of Andreas and Chain Locations. That hearing was, however, continued at Pamela's and Agnes' request. On August 16, 1995, the New York Court gave Pamela and Agnes the choice of (i) proceeding to a final hearing on August 27, 1995, or (ii) postponing that hearing and leaving in place the July 5 Order suspending Pamela's and Agnes' powers to act as officers and directors of Andreas and Chain Locations. Pamela and Agnes elected to postpone a final hearing, and did not seek further expedition of the New York Court proceeding.

Instead, on September 5, 1995, Agnes and Pamela filed this § 225 action, seeking a declaration that (i) Agnes is the sole stockholder of, and entitled to vote, all of Andreas' shares, (ii) the actions taken by the co-Executors at the May 2, 1995 shareholders' meeting of Andreas, ousting Pamela and Agnes from their positions as officers of Andreas and substituting Betty Godley, were legally invalid, and (iii) that Agnes and Pamela remain as officers of Andreas.

Ten days later, on September 5, 1995, the remaining co-Executors filed a petition in the New York Court to remove Pamela and Agnes as Executors of the Estate, to vacate the Andreas confession of judgment, and to restrain Pamela and Agnes from further prosecuting this action. The New York Court has fixed a schedule, agreed to by counsel for all parties (including counsel for Pamela and Agnes), that calls for the completion of discovery on that petition in early February 1996. The issue of who owns the Andreas stock would be determined when the New York Court decides the petitions presently pending before it.

It is against this backdrop that the instant motion to stay arises.

## II.

■ The legal predicate for this motion to stay is *McWane Cast Iron Pipe Corp. v.*

*McDowell–Wellman Eng'g. Co.*, Del.Supr., 263 A.2d 281 (1970) ("*McWane*"), which holds that this Court's discretion

... should be exercised freely in favor of the stay when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues ...

*Id.* at 283. Underlying this rule are considerations of comity and the policy that

... litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation in another jurisdiction of its own choosing ...

*Id.*

■ The defendants argue, and the record establishes, that *McWane* applies squarely to the facts at bar. The pivotal issue upon which the disputed title to corporate office rests is who owns the Andreas stock; Agnes or the Estate. If the owner is found to be Agnes, the plaintiffs prevail; if the owner is the Estate, the defendants prevail. Although the plaintiffs contend otherwise, that issue is presently before the New York Court and was pending there before this action was filed. On July 5, 1995, two months before this action was commenced, the New York Court suspended Agnes' and Pamela's power to act as officers of Andreas, and proposed to schedule a final hearing on the governance question, the determination of which would necessarily would turn on whether the Estate or Agnes owned the Andreas stock. The ownership issue was also raised after this action was filed, in the co-Executors' September 15, 1995 petition to revoke the letters testamentary of Pamela and Agnes. That petition was based upon the co-Executors' claim that allowing the confessed judgment to be entered against Andreas wrongfully reduced the value of an Estate asset (the Andreas stock). The plaintiffs' defense that their actions were not wrongful rests upon their position that Agnes owns the shares of Andreas.

All parties to this action are also parties to the New York proceedings, although the re-

verse is not true. Moreover, the New York Court is capable of doing justice. It is empowered to adjudicate finally and definitively the stock ownership question, which concerns a claimed asset of a New York Estate and a dispute among New York residents and entities that is governed by New York law.

Finally, this proceeding was commenced to remove the controversy from the forum where it was first presented (New York) to a forum of the plaintiffs' choice (Delaware). The plaintiffs did that by filing this action two months after the New York Court had entered its interim Order suspending their power to act as directors of Andreas, the plaintiffs having declined the opportunity for the New York Court to finally determine the corporate governance issue.

For these reasons, under the *McWane* doctrine a stay would normally be granted as a matter of course. However, because this is a summary proceeding under 8 *Del. C.* § 225, the analysis is more complex and goes beyond the mere application of *McWane* to the facts at hand.

### III.

As the plaintiffs point out (and the defendants do not dispute), on a motion to stay a § 225 action the *McWane* policies of comity and of promoting the efficient administration of justice must be balanced against the policies that underlie § 225. One of those policies is to afford a procedure for determining expeditiously who are a Delaware corporation's *de jure* managers, in order to resolve uncertainty over who is authorized to manage the corporation and act on its behalf. *See Kirkland v. International Community Corp.*, Del. Ch., C.A. No. 7577, Berger, V.C., 1984 WL 8222 (May 29, 1984); *Pulver v. Stafford*, Del. Ch., C.A. No. 8567, Hartnett, V.C., 1987 WL 9368 (Apr. 2, 1987). Another is to promote uniformity of construction of Delaware law in this important area. *Japan*

*Lease International Corp. v. Lyons Container Services, Inc.*, Del. Ch., C.A. Nos. 4092 and 4104, Duffy, C., Ltr. Op. at 4, 1973 WL 461 (May 8, 1973).

In the majority of cases where a stay of a § 225 action has been requested in favor of a prior-filed action pending in another jurisdiction, the stay has been denied because the important statutory policies underlying § 225 were found to predominate and override the policies underlying *McWane*. *Atkins v. Hiram*, Del. Ch., C.A. No. 12887, Hartnett, V.C., 1993 WL 287617 (July 26, 1993); *Oralco, Inc. v. Bradley*, Del. Ch., C.A. No. 12763, Chandler, V.C., 1992 WL 332106 (Nov. 4, 1992); *Pulver, supra; Kirkland, supra.* In those cases a prompt resolution of the corporate governance dispute was needed, and the non-Delaware court was not in a position to provide that expedited adjudication.

This is not to say, however, that the policies underlying § 225 will always "trump," *i.e.,* will invariably compel the denial of a stay in every circumstance. This Court has determined, in a minority of cases, that where a stay of the § 225 motion was otherwise legally warranted and would not undermine or defeat the statutory purposes, the stay would be granted. *Japan Lease International Corp. v. Lyons Container Services, Inc., supra;*[1] *Goldman v. Aegis Corp.*, Del. Ch., C.A. No. 6463, Brown, V.C., 1981 WL 17033 (Aug. 3, 1981). For the following reasons, I conclude that this is one of those unusual cases that fall into that latter category.

As earlier noted, this action was filed to remove the governance controversy from New York to Delaware. That controversy was pending before the New York Court, which was prepared to proceed to a final hearing. Here, unlike the circumstances in *Kirkland, Pulver, Atkins* and *Oralco*, the non-Delaware court has the corporate governance issue before it and is in a position to decide that issue promptly. Moreover, the

---

1. As former Chancellor Duffy stated in *Japan Lease International Corp., supra,* at p. 4:

I recognize that the Court of Chancery has statutory responsibilities under § 225 and that it generally supervises the internal affairs of a Delaware corporation. And it is important in the administration of our corporation law that there be a uniformity of construction. But I am not persuaded that these considerations

mandate the Court to decide any controversy submitted under the corporation law statutes no matter what actions may be pending between the parties in other jurisdictions. I think that we still have an obligation to look at all of the attendant circumstances and make a decision which includes a consideration of the orderly and efficient administration of justice as we see it in light of the binding case law.

pivotal issue on which the governance issue rests—the ownership of the Andreas stock—involves the application of New York, not Delaware, law. Thus, one of the policies underlying § 225—to afford a prompt judicial resolution of corporate governance disputes—is not threatened;[2] and the other—to promote the uniform construction of Delaware law—is not implicated.

But the case favoring a stay of this action is stronger than that and goes beyond these considerations. Critical to the result reached here is that the governance controversy is only one part of a much broader dispute among the parties—a dispute that by its nature only the New York Court can definitively and effectively resolve. Although the plaintiffs portray this dispute as one involving the corporate governance of Andreas, in reality it is only one part of, and is subsumed within, a larger controversy among the co-Executors of a New York estate. That larger dispute concerns whether certain of the Executors (the plaintiffs, or Mr. Davis and Mr. Arcadipane, or any of them) are fit to continue to retain their Executor positions, or whether they (or some of them) should be judicially removed from those positions. Thus, Agnes and Pamela accuse Mr. Davis and Ms. Arcadipane of using the assets of the Estate for their own benefit and ask the New York Court to remove Davis and Arcadipane as Executors and Trustees. The remaining co-Executors accuse Agnes and Pamela of improperly diverting to themselves assets of the Estate (*i.e.*, funds of Andreas and Chain Locations) and seek the removal of Agnes and Pamela as Executors. That latter claim rests upon the co-Executors' contention that the Andreas (and Chain Locations) stock are assets of the Estate. Agnes' and Pamela's

defense to that claim is that the stock of those corporations are assets belonging to Agnes.

Thus, the real battleground is not Delaware but New York. The plaintiffs seek to have one piece of that larger controversy (the stock ownership issue) decided here. However, only the New York Court can resolve the stock ownership controversy in a definitive, effective way, because all the parties claiming to own the stock are before the New York Court but not this Court. Here, only Pamela, Agnes, one of the other co-Executors (Godley) and Andreas are parties, but not the Estate or the remaining co-Executors. Because all of the parties to the ownership dispute are not before this Court, it is jurisdictionally incapable of resolving the stock ownership issue in a definitive, final way, which is what the parties truly need to resolve their dispute effectively. All this Court could accomplish under § 225 is to determine the stock ownership question for the limited purpose of resolving the corporate governance of Andreas. That would amount to a nonbinding opinion and would increase the expense to the parties, yet not resolve their problems in an effective way; and it would also risk encroaching upon the New York Court's legitimate authority to supervise the Estates of New York residents—all without any countervailing Delaware policy justification.[3]

For those reasons, this proceeding is stayed until further Order of the Court. IT IS SO ORDERED.

**2.** The plaintiffs have not shown that the New York Court is unwilling or unable to hear and determine the stock ownership issue on a prompt basis following the expiration of the discovery schedule to which the plaintiffs have agreed. Should a prompt hearing not be possible, resulting in the governance of Andreas being placed in a state of limbo or uncertainty for an unreasonable or indefinite period of time, the plaintiffs may apply to this Court to lift the stay.

**3.** Although the dispute before the New York Court has a corporate governance "fallout" as far as Andreas is concerned, it is not one that requires this Court to take prompt action to

protect the interests of unaffiliated investors. Andreas is not a corporation having numerous stockholders whose interests need to be protected against the "uncertainty risk" caused by a dispute over who constitutes the corporation's lawful management. Andreas has only one stockholder: either Agnes or the Estate. Both of those parties are before the New York Court (but not this Court). Moreover, there is no uncertainty, at least for the near term, over who is entitled to act on Andreas' behalf. The New York Court has vested those powers, on an *interim* basis, in Ms. Godley, until the ownership issue is finally resolved.