**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| In re BAY HILLS EMERGING | ) | |
| PARTNERS I, L.P.; BAY HILLS | ) | |
| EMERGING PARTNERS II, L.P.; | ) | |
| BAY HILLS EMERGING PARTNERS | ) | **C.A. No. 2018-0234-JRS** |
| II-B, L.P.; and BAY HILLS | ) | |
| EMERGING PARTNERS III, L.P., | ) | |
| Delaware limited partnerships. | ) | |

**ORDER REFUSING APPLICATION FOR CERTIFICATION OF
INTERLOCUTORY APPEAL**

**WHEREAS**:

A.  On April 2, 2018, Plaintiffs filed a complaint under 6 *Del. C.* §§ 17-110 and 17-111, seeking a declaration that (1) the Fund GPs[1] were not properly removed and continue to serve as general partners of the Funds; and (2) the Fund GPs and Bay Hills "have not breached, materially or otherwise, any contractual duty or other legal duty in connection with the Funds."[2]

B.  On July 2, 2018, this Court issued a Memorandum Opinion (the "Opinion") denying Defendants' motion to dismiss the complaint (the "Motion").  The Motion

---

[1] Capitalized terms are as defined in the Court's July 2, 2018 Memorandum Opinion. *In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650 (Del. Ch. July 2, 2018).

[2] Plaintiffs filed an amended complaint on April 9, 2018, asserting these same counts for declaratory relief.  *See* D.I. 18 (Am. Verified Compl. Pursuant to 6 *Del. C.* §§ 17-110 and 17-111), ¶ 95.

1

sought dismissal on the basis of a purported mandatory forum selection clause designating a court in the Commonwealth of Kentucky as the exclusive jurisdiction to resolve disputes arising out of the LPA that governed the limited partnerships at issue. Although the Court determined that dismissal was not justified because the purported forum selection clause was, in fact, a permissive consent to jurisdiction clause, the Court did determine, *sua sponte*, that a stay of this Delaware action in favor of a contemporaneously filed Kentucky action was justified in the interests of comity and judicial efficiency.[3]

C. On July 6, 2018, Plaintiffs filed their Application for Certification of Interlocutory Appeal (the "Application").

D. The Application asserts three grounds under Delaware Supreme Court Rule 42: (1) "the [Opinion] involves a novel question of law"; (2) "the [Opinion] conflicts with other trial court decisions on the applicable legal standard"; and (3) "interlocutory review [will] serve considerations of justice."[4]

---

[3] The Court determined that the Kentucky action was filed contemporaneously with the Delaware action under the circumstances presented even though it was filed eight days later. *In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650 at *8. The Court based its finding primarily on the fact that Plaintiffs here filed this action upon receiving notice of their removal (prior to the expiration of their contractual cure period) and in apparent anticipation of the limited partners' filing in Kentucky. *Id.*

[4] Pls.' Br. in Supp. of their Appl. for Certification of Interlocutory Appeal ("Appl.") 5, 8, 11.

E. On July 16, 2018, Defendants filed their opposition to the Application.

AND NOW, this 23rd day of July, 2018, the Court having considered the Application, Defendants' opposition and the criteria set forth in Supreme Court Rule 42, it appears to the Court that:

1. Supreme Court Rule 42(b)(i) provides that "[n]o interlocutory appeal will be certified by the trial court or accepted by [the Delaware Supreme] Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment." Rule 42(b)(ii) provides that instances where the trial court certifies an interlocutory appeal "should be exceptional, not routine, because [interlocutory appeals] disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources." For this reason, "parties should only ask for the right to seek interlocutory review if they believe in good faith that there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[5]

2. When considering whether to certify an interlocutory appeal, "the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of

---

[5] Supr. Ct. R. 42(b)(ii).

3

justice. If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[6]

3.      After carefully considering the Application, I am satisfied that the Opinion does not decide a substantial issue of material importance that merits appellate review before a final judgment.[7] Specifically, the Opinion does not decide a novel issue of law or conflict with other trial court decisions, and interlocutory review would not serve considerations of justice. Consequently, and for the three reasons stated below, I cannot certify that interlocutory review of the Opinion is warranted on a cost-benefit basis or otherwise.

4.      *First*, the Application contends the Opinion "involves a novel question of law"[8]—specifically, "whether the same policy interests (recognized under *McWane*[9]) should be included in or even predominate and override a court's application of the *Cryo-Maid*[10] factors in deciding whether to stay a summary action

---

[6] Supr. Ct. R. 42(b)(iii).

[7] A substantial issue of material importance is one that "relate[s] to the merits of the case." *Castaldo v. Pittsburgh-Des Moines Steel Co., Inc.*, 301 A.2d 87, 87 (Del. 1973).

[8] Appl. 5.

[9] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng. Co.*, 263 A.2d 281 (Del. 1970).

[10] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. 1964).

4

in favor of a plenary action filed in another state."[11] Plaintiffs assert that, under Delaware law, the Court may not stay "a summary Delaware action in favor of a first-filed plenary action" and, accordingly, "it should follow that a contemporaneously filed (or first-filed) Delaware summary action should not be stayed in favor of out-of-state plenary litigation."[12]

The Application mischaracterizes the bases for the Court's decision to order a stay and overstates the limitations on the Court's discretionary authority to stay statutory summary proceedings. As noted in the Opinion, "[a] court may, 'in the interests of comity and judicial efficiency, stay an action before it in favor of another with an identity of parties and issues pending in another forum.'"[13] "The Court's right to grant a stay is within the exclusive discretion of the Court. The discretion to issue a stay is inherent in every court and flows from its control over the disposition of cases on its docket."[14] "That authority, . . . is 'subject only to statutory and rule constraints and the requirement to exercise discretion rationally.'"[15] As the

---

[11] Appl. 6 (internal citation and quotation marks omitted).

[12] Appl. 7.

[13] *Bay Hills*, 2018 WL 3217650, at *7 (quoting *Scott v. Dondero*, 2014 WL 4406996, at *2 (Del. Ch. Sept. 8, 2014)).

[14] *In re Insys Therapeutics Inc. Deriv. Litig.*, 2017 WL 5953515, at *2 (Del. Ch. Nov. 30, 2017) (internal quotation omitted).

[15] *Brenner v. Albrecht*, 2012 WL 252286, at *4 (Del. Ch. Jan. 27, 2012) (quoting *Brudno v. Wise*, 2003 WL 1874750, at *4 (Del. Ch. Apr. 1, 2003)) (internal alteration omitted).

Opinion explained, "'[u]ltimately, the exercise of the court's discretion will depend upon review of the relevant practical considerations keeping in mind the broader policies of comity between the states and their courts and the orderly and efficient administration of justice.'"[16]

It is true, as Plaintiffs point out, that Delaware courts should, and do, consider the summary nature of a Delaware action when determining whether a stay of that action is appropriate.[17] But the mere fact that the Delaware action is a statutory summary proceeding will not prohibit a trial court from staying that proceeding when "otherwise legally warranted and [when the stay] would not undermine or defeat the statutory purposes."[18] For instance, in *Japan Lease International Corp. v. Mediatrics, Inc.*, the court began its stay analysis by acknowledging that plaintiff had initiated the Delaware action under 8 *Del. C.* § 225 (the corporate analogue of 6 *Del. C.* § 17-110)[19] with the legitimate expectation that the proceedings would be summary in nature.[20] The court also acknowledged that

---

[16] *Bay Hills*, 2018 WL 3217650, at *7 (quoting *Adirondack GP, Inc. v. Am. Power Corp.*, 1996 WL 684376, at *6 (Del. Ch. Nov. 13, 1996)).

[17] *See Carvel v. Andreas Hldgs. Corp.*, 698 A.2d 375, 378 (Del. Ch. 1995).

[18] *Id.* (internal citation omitted).

[19] *See Adirondack*, 1996 WL 684376, at *3 ("[S]ection 110 is the partnership analogue to section 225.").

[20] *Japan Lease Int'l Corp. v. Mediatrics, Inc.*, 1973 WL 461, at *2 (Del. Ch. May 8, 1973).

Section 225 charges the Court of Chancery with the responsibility of "supervis[ing] the internal affairs of Delaware corporation[s]."[21] Nevertheless, then-Chancellor Duffy explained that the court was not "mandate[d] to decide any controversy submitted under the corporation law statutes no matter what actions may be pending between the parties in other jurisdictions."[22] He continued, "I think we still have an obligation to look at all of the attendant circumstances and make a decision which includes a consideration of the orderly and efficient administration of justice as we see it in light of the binding case law."[23]

In the Opinion, the Court determined a stay was warranted "in the interests of the orderly and efficient administration of justice" because "[t]he Kentucky and Delaware Actions overlap[ped] substantially[,] [t]he parties [were] functionally

---

[21] *Id.*

[22] *Id.*

[23] *Id.*; *see also Carvel*, 698 A.2d at 378 (internal citation omitted) (recognizing that Delaware law does not mandate that a trial court allow summary proceedings to go forward even if the court determines that the case otherwise would be subject to a stay); *Choice Hotels Int'l, Inc. v. Columbus-Hunt Park Dr. BNK Investors, L.L.C.*, 2009 WL 3335332, at *5 (Del. Ch. Oct. 15, 2009) (explaining, "this court consistently looks at all the attendant circumstances when faced with a motion to stay or dismiss a statutory cause of action arising out of one of our business entity statutes, including actions to determine the management of a business entity, in favor of a foreign-filed action"); *Xpress Mgmt., Inc. v. Hot Wings Int'l, Inc.*, 2007 WL 1660741, at *6 (Del. Ch. May 30, 2007) (granting a stay, explaining "[i]n the circumstances present here, the equitable powers this court enjoys to manage its own docket and to provide for the efficient and orderly administration of justice outweigh, at least in the foreseeable future, this particular petitioner's statutory right to an immediate dissolution under section 273").

7

identical[,] both actions w[ould] require the courts to adjudicate the same contract dispute . . . [and] the simultaneous procession of both actions risk[ed] the significant waste of scarce judicial resources and, more importantly, the inconsistent resolution of relevant issues."[24] The Opinion applied well-settled Delaware law and considered the same policy interests embodied in legion authority where our courts have recognized the court's discretion to manage its docket.[25] Thus, the Opinion did not decide a novel question of law.

5.      *Second*, the Application mischaracterizes the scope of, and differences between, the Delaware and Kentucky actions. According to the Application, interlocutory review of the Opinion would serve considerations of justice because the "Delaware forum offers an expedited means of resolving this control dispute that the Kentucky Action does not."[26] The Application continues, because "this Court['s procedures under Section 17-110] . . . are designed 'to prevent a Delaware entity from being immobilized by controversies about whether a given . . . general partner [] 'is properly holding office,'" this action "should be decided promptly by the

---

[24] *Bay Hills*, 2018 WL 3217650, at *7–8.

[25] *See CBOT Hldgs., Inc. v. Chicago Bd. Options Exch., Inc.*, 2007 WL 2296355, at *11, n.45 (Del. Ch. Aug. 3, 2007) (collecting cases).

[26] Appl. 11.

8

Delaware Court of Chancery."[27]  In contrast, Plaintiffs point out that Defendants'

claims in Kentucky are plenary, broader in scope and "threaten to undermine the

Delaware courts' authority and independence."[28]

As mentioned in the Opinion, notwithstanding Plaintiffs' characterization of

their claims, this action most certainly does not present a narrow governance dispute

that can be resolved with the development of a downsized factual record and

summary application of Delaware law.  Instead, Plaintiffs have sought declarations

under Section 17-111 that they did not breach the LPA (or other duties they may

owe the limited partners) in a manner that would justify their removal as general

partners.  Plaintiffs' claims do not implicate discreet matters of Delaware entity law;

they are, instead, straight-up contract claims involving a complex, long-term

relationship between determinate parties who have agreed that their disputes would

be decided under Kentucky law (and who have expressly consented to the

---

[27] Appl. 11 (quoting *Box v. Box*, 697 A.2d 395, 398 (Del. 1997)).

[28] Appl. 12.  In this regard, Plaintiffs argue that the request for injunctive relief in Kentucky threatens to undermine the *status quo* order I entered in this case.  I note that I entered the *status quo* order to address governance of the Funds while Defendants' motion to dismiss was pending (and perhaps beyond that if the motion was denied).  The Order expressly reserves the parties' "right to make any motion or argument concerning jurisdiction, venue, adequacy of the pleadings, or other matter, to seek or oppose relief from any other court of competent jurisdiction, to contest the jurisdiction of any court, or to move to lift this Order for good cause shown."  Status Quo Order, D.I. 17, ¶ 6.  Given that I have ordered a stay of the litigation here, I expect that the parties will seek to address the interim management of the Funds with the Kentucky court (as permitted by the *status quo* order).

9

jurisdiction of the Kentucky court).[29]  Those same claims will be litigated in Kentucky whether or not this action is stayed.  To suggest that the Delaware action is a typical summary proceeding, or that the dispute can be resolved substantially more quickly here than in Kentucky, is to blink at the reality of the scope of the controversy between these parties and what will be required to adjudicate it.[30]

Moreover, contrary to Plaintiffs' protestation that a stay of this action will somehow immobilize the Delaware entities, the Funds are "funds-of-funds" that have but one limited partner—Defendant, KRS.  Accordingly, there is no concern

---

[29] *Bay Hills*, 2018 WL 3217650, at *10 ("The claims presented here do not implicate unique issues of Delaware law. Instead, they require a straightforward application of the LPA's contractual provisions as interpreted under the parties' bargained-for choice of Kentucky law."); *see also Adirondack*, 1996 WL 684376, at *5 ("What is in dispute in this case is not the title to the office, but [the general partner's] performance of its obligations under the funding and partnership agreements.  The dispute, therefore, fits squarely within the provisions of section 111, as it is an action to interpret, apply or enforce the provisions of an agreement, and [the general partner's] 'duties, obligations or liabilities . . . to the limited partnership.'" (quoting 6 *Del. C.* § 17-111) (alteration in original)).

[30] *See Carvel*, 698 A.2d at 379.  In *Carvel*, this court found that the circumstances justifying a stay outweighed the policies underlying 8 *Del. C.* § 225—and by analogy Section 17-110.  Specifically, the court found a stay was warranted because the New York court (where the first action was filed) was prepared to proceed, the pivotal issue involved application of New York law and the dispute over corporate governance was "in reality . . . only one part of, and [] subsumed within, a larger controversy."  *Id.*  The court noted that there was no "countervailing Delaware public policy" justifying denial of a stay because: "[a]lthough the dispute before the New York Court has a corporate governance 'fallout' as far as [defendant] is concerned, it is not one that requires this Court to take prompt action to protect the interests of unaffiliated investors.  [Defendant] is not a corporation having numerous stockholders whose interests need to be protected against the 'uncertainty risk' caused by a dispute over who constitutes the corporation's lawful management [because defendant] has only one stockholder [who is before the New York court] . . . "  *Id.* at 379 n.3.

that a stay in Delaware will cause uncertainty among other investors or potential investors.[31] As in any dispute over the control of an operating business entity, whether based in contract or otherwise, interim measures will have to be taken to minimize disruption and ensure proper management while the control issues are resolved. The Kentucky court is certainly capable of overseeing that process. In the unlikely event it does not, either party is free to return to this Court to seek relief from the stay.[32]

6.     *Finally*, the Application asserts the Opinion conflicts with other trial court decisions on the applicable legal standard because it weighed the *forum non conveniens* factors instead of requiring a showing of "overwhelming hardship," even though a stay "would have the same ultimate effect as dismissal."[33]  "Generally, for court decisions to be 'conflicting upon [a] question of law,' they must disagree about legal standards."[34]  There was no "disagreement" here.

When our courts have applied the "overwhelming hardship" standard to a motion to stay on the ground that the stay would be tantamount to dismissal, they

---

[31] *See id.* at 379 n.3.

[32] *Bay Hills*, 2018 WL 3217650, at *10 ("Either party may apply to lift the stay should good cause warrant such an application.").

[33] Appl. 8 (quoting *Rosen v. Wind River Sys., Inc.*, 2009 WL 1856460, at *3 (Del. Ch. June 26, 2009)) (internal quotation marks omitted).

[34] *Roseton OL, LLC v. Dynegy Hldgs. Inc.*, 2011 WL 3420845, ¶ 9 (Del. Ch. Aug. 4, 2011) (ORDER).

have done so to address the concern that a defendant seeking dismissal under the guise of a stay should not be entitled to invoke a less onerous standard to achieve the same practical relief.[35] That concern is not implicated in this case; the Opinion did not address a motion to stay brought by Defendants in hopes they could avoid the need to articulate overwhelming hardship. Indeed, Defendants sought dismissal on what they construed to be a mandatory forum selection clause (selecting Kentucky) in the operative limited partnership agreement. Rather, the Court determined, *sua sponte*, that a stay was appropriate based on "principles of comity and judicial efficiency"[36] because "[t]he simultaneous procession of both actions risk[ed] the significant waste of scarce judicial resources and, more importantly, the inconsistent

---

[35] *See, e.g.*, *BP Oil Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382, at *3 (Del. Super. Feb. 25, 2010) (recognizing that the application of something less than the overwhelming hardship standard when *a defendant requests* a stay that ultimately effects dismissal "would allow and encourage defendants to move this Court for a stay rather than a dismissal, and thereby achieve the same result without the showing of hardship articulated by the [Delaware] Supreme Court." (quoting *In re Citigp. Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 117 n.16 (Del. Ch. 2009))); *Rosen*, 2009 WL 1856460, at *3 ("[T]here is a 'so-called debate' concerning the degree of hardship a party requesting relief on *forum non conveniens* grounds must demonstrate based on whether *the party seeks* a stay or dismissal." (emphasis supplied)).

[36] *Rosen*, 2009 WL 1856460, at *7.

resolution of relevant issues."[37] This was hardly a remarkable or rogue determination.[38]

7.     Under the circumstances presented here, I cannot certify that the benefits of interlocutory review outweigh the probable cost. Thus, I cannot conclude that interlocutory review of the Opinion would serve the interests of justice. Accordingly, Plaintiffs' Application is **REFUSED**.

**IT IS SO ORDERED.**

                                          */s/ Joseph R. Slights III*
                                              Vice Chancellor

---

[37] *Bay Hills*, 2018 WL 3217650, at *8; *see also id.* at *10 ("[I] defer to Kentucky in the interests of the orderly and efficient administration of justice.").

[38] *See, e.g.*, *Online Res. Corp. v. Lawlor*, 2010 WL 3949232, at *1 (Del. Ch. Sept. 21, 2010) (staying indefinitely an action *sua sponte* "in the interest of comity and judicial efficiency, most especially, the conservation of judicial resources," where the courts in both actions would be adjudicating the same dispute, noting "[i]f [the Delaware plaintiff] is unable to assert as a counterclaim its claim involving the severance agreement in the Circuit Court of Virginia or if that proceeding is not prosecuted diligently by [defendant], [plaintiff] may seek to vacate the Stay Order and I will rule promptly on [defendant's] pending motion to dismiss"); *Carvel*, 698 A.2d at 379 (staying the Delaware action because it would only determine a small part of the parties' broader dispute that was before a court in another jurisdiction).