# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

STATE OF DELAWARE,                    :
DEPARTMENT OF FINANCE,               :
                                      :
                 Plaintiff,           :
                                      :
        v.                            :        C.A. No. 2018-0884-JRS
                                      :
UNIVAR, INC.,                         :
                                      :
                 Defendant.           :

## ORDER DENYING APPLICATION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

WHEREAS, on October 30, 2018, Plaintiff, the State of Delaware Department of Finance (the "State"), issued an administrative subpoena to Defendant, Univar, Inc., directing Univar to produce certain records in connection with the State's Notice of Examination to conduct an unclaimed property audit[1];

WHEREAS, on December 3, 2018, Univar filed suit in the United States District Court for the District of Delaware (the "District Court") against certain representatives of the State to challenge the constitutionality of several Delaware

---

[1] *See* 12 *Del. C.* § 1171(3) ("Section 1171") (amending 12 *Del. C.* § 1171 *et seq.* in 2017 to provide the State with administrative subpoena power to obtain documents in furtherance of unclaimed property audits).

escheat laws, or the State's application of such laws, including the State's retroactive application of Section 1171[2];

WHEREAS, on December 7, 2018, the State filed this action to enforce the subpoena against Univar under 12 *Del. C.* § 1171(4), which authorizes the State Escheator to "bring an action in the Court of Chancery seeking enforcement of an administrative subpoena issued under paragraph 3 . . . which the Court shall consider under procedures that will lead to an expeditious resolution of the action";

WHEREAS, the Court issued a bench ruling on April 8, 2019,[3] and an implementing order on April 18, 2019,[4] (together, the "Order"), granting Univar's motion to stay the Chancery litigation in favor of the District Court litigation upon concluding, for the sake of efficiency and comity, that the threshold constitutional issues raised by Univar should be adjudicated in the District Court;

WHEREAS, on April 18, 2019, the State filed an Application for Certification of an Interlocutory Appeal of the Order (the "Application")[5];

---

[2] The State's Notice of Examination was issued to Univar on December 11, 2015. Accordingly, among other challenges, Univar contends that the State's new-found subpoena power cannot be exercised retroactively.

[3] D.I. 35 (*State of Del. Dept. of Fin. v. Univar, Inc.*, C.A. No. 2018-0884-JRS (Del. Ch. Apr. 8, 2019) (TRANSCRIPT)).

[4] D.I. 32.

[5] D.I. 33.

2

WHEREAS, the Application asserts three grounds for interlocutory appeal under Supreme Court Rule 42: (1) the Order "involves a question of law resolved for the first time in this State,"—citing Supreme Court Rule 42(B)(iii)(A); (2) the Order "determines the constitutionality . . . or application of a statute of this State"—citing Supreme Court Rule 42(B)(iii)(C); and (3) "[r]eview of the interlocutory order may serve considerations of justice"—citing Supreme Court Rule 42(B)(iii)(H)[6];

WHEREAS, on April 29, 2019, Univar opposed the Application[7]; and

WHEREAS, the Court has carefully considered the Application, Univar's response and the criteria set forth in Supreme Court Rule 42,

**IT IS HEREBY ORDERED**, this ___6th___ day of May, 2019, that:

1.     Supreme Court Rule 42(b)(i) provides that "[n]o interlocutory appeal will be certified by the trial court or accepted by the Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment." According to Rule 42(b)(ii), instances where the trial court certifies an interlocutory appeal "should be exceptional, not routine, because [interlocutory appeals] disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources." For these reasons, "parties should only ask for the right to seek interlocutory review if they

---

[6] Application 8–9, 11.

[7] D.I. 36.

3

believe in good faith that there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[8]

2. When certifying an interlocutory appeal, "the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice. If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[9]

3. After carefully reviewing the Order, I am satisfied that it does not decide a substantial issue of material importance that merits appellate review before a final judgment. Specifically, the Order did not decide a novel issue of law or address the constitutionality of a Delaware statute.[10] Likewise, the interests of justice would not be served by interlocutory review because the Court did not address the claims or defenses raised by the parties on the merits, but rather simply determined that the District Court should address the threshold federal constitutional issues before this Court determines whether to enforce the State's subpoena. With no substantial issue decided and no interest of justice implicated, I cannot say that

---

[8] Supr. Ct. R. 42(b)(ii).

[9] Supr. Ct. R. 42(b)(iii).

[10] Indeed, the Order expressly declined to address the constitutionality of the various escheat statutes implicated in this case, including 12 *Del. C.* § 1171, so that the District Court could address those questions in the first-filed federal action.

the remote benefits of an interlocutory appeal outweigh the certain costs. For reasons I explain below, the Application's arguments to the contrary are rejected.

4. Our "Supreme Court generally does not accept interlocutory appeals relating to motions to stay because motions to stay usually do not address the substantive merits of the parties' underlying claims, which is the central focus of the Rule 42 analysis."[11] There is no reason to depart from this general rule here because, as noted, the Court has yet to address the substantive merits of the parties' claims or defenses. Indeed, the Court emphasized in the Order that the decision to stay the litigation was not intended to signal any view on the merits of the State's claims in this Court or its defenses in the District Court action.[12] The Court then allowed that if the District Court decides that this Court should address the more focused constitutional issues related to the State's subpoena, the Court would invite and, indeed, welcome a motion to lift the stay.[13]

---

[11] *MICH II Hldgs. LLC v. Schron*, 2012 WL 3224351, at \*6 (Del. Ch. Aug. 7, 2012). *See also BHEP GP I, LLC v. Ky. Ret. Sys.*, 191 A.3d 292 (Del. 2018) ("[W]e decline to accept an interlocutory appeal to consider whether to second-guess [the Court of Chancery's] view that it was prudent and efficient to stay this action."); *Castaldo v. Pittsburgh-Des Moines Steel Co., Inc.*, 301 A.2d 87, 87 (Del. 1973) (noting a substantial issue of material importance is one that "relate[s] to the merits of the case").

[12] Tr. 47.

[13] *Id.*

5

5. Contrary to the State's characterization, the Order did not decide a novel issue of law raised for the first time in Delaware or determine the constitutionality or novel application of a Delaware statute.[14] While this may be the first time the State has sought to enforce a subpoena under Section 1171(4), and the stay will delay "resolution" of that effort, the State cannot ignore that its authority to issue and enforce the subpoena in furtherance of its unclaimed property audit is now the subject of pending (first-filed) litigation in federal court. By the State's lights, two courts should be deciding the threshold constitutional issues raised in the District Court action at the same time.[15] I disagreed and stayed this action. This was hardly a novel or provocative application of Delaware law.[16] As both this court and our Supreme Court have held time and again, "[t]he discretion to issue a stay is inherent in every court and flows from its control over the disposition of cases on its

---

[14] According to the State, the Court's order staying the action "override[s] the plain language of [Section 1171(4)]" by ignoring the statute's mandate that enforcement actions be subject to "expeditious resolution." *See* Application 12 (citing 12 *Del. C.* § 1171(4)).

[15] The State acknowledged at oral argument that if the 2017 amendments to the Delaware escheat law cannot lawfully be applied retroactively, as alleged in the federal action, then its subpoena would be "improper." Tr. 19. Nevertheless, it maintained that this Court and the District Court should decide that issue simultaneously. Tr. 23–26, 29.

[16] The notion that the stay was novel because it was ordered in a statutory summary proceeding finds no support in our law. *See, e.g.*, *Xpress Mgmt. Inc. v. Hot Wings Int'l, Inc.*, 2007 WL 1660741, at *5–6 (Del. Ch. May 30, 2007) (granting a stay of a section 273 summary proceeding); *Carvel v. Andreas Hldg. Corp.*, 698 A.2d 375, 378–79 (Del. Ch. 1995) (granting a stay of a section 225 summary proceeding); *H. K. Porter Co. v. Mo. Portland Cement Co*, 1976 WL 2445, at *2 (Del. Ch. July 9, 1976) (same).

docket."[17]  The power to stay litigation is "subject only to statutory and rule constraints and the requirement to exercise discretion rationally."[18]  And it is a power that resides with the trial court; the parties do not get to dictate (as opposed to suggest) when or on what grounds the court exercises its discretion to stay a case.[19]

[17] *In re Insys Therapeutics Inc. Deriv. Litig.*, 2017 WL 5953515, at *2 (Del. Ch. Nov. 30, 2017) (internal quotation and citations omitted). *See also Ezzes v. Ackerman*, 234 A.2d 444, 446–47 (Del. 1967) (holding that "the grant or denial of a stay is solely within the discretion of the trial court and . . . may be reversed solely for abuse of discretion"); *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102, 1107 (Del. 2006) (internal quotation omitted) ("It is well settled that the trial court has discretion to resolve scheduling issues and to control its own docket."); *Salzman v. Canaan Capital P'rs, L.P.*, 1996 WL 422341, at *5 (Del. Ch. July 23, 1996) ("To enable courts to manage their dockets, courts possess the inherent power to stay proceedings.").

[18] *Brenner v. Albrecht*, 2012 WL 252286, at *4 (Del. Ch. Jan. 27, 2012).  *See also Cummings v. Estate of Lewis*, 2013 WL 979417, at *10 (Del. Ch. Mar. 14, 2013) (internal quotation omitted) ("Ultimately, the Court must make a practical judgment as to whether a stay is warranted under the circumstances of each case . . . ."); *Online Res. Corp. v. Lawlor*, 2010 WL 3949232, at *1 (Del. Ch. Sept. 21, 2010) (staying indefinitely an action "in the interest of comity and judicial efficiency, most especially, the conservation of judicial resources," where the courts in both actions would be adjudicating the same dispute); *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 397 (Del. Ch. 2009) ("This Court possesses inherent power to manage its own docket, including the power to stay litigation on the basis of comity, efficiency, or simple common sense."); *Carvel*, 698 A.2d at 379 (staying the Delaware action because it would only determine a small part of the parties' broader dispute that was before a court in another jurisdiction); *Phillips Petroleum Co. v. ARCO Alaska, Inc.*, 1983 WL 20283, at *4 (Del. Ch. Aug. 3, 1983) (granting stay in favor of pending arbitration based on "common sense").

[19] The State takes issue with the fact that the Court entered a stay for the sake of comity and efficiency even though it rejected Univar's argument that a stay was mandated under the so-called *McWane* doctrine.  *See* Tr. 44 (finding that "this case does not fit neatly within the framework established in *McWane*" because "the parties in the two actions do not line up entirely" and the federal court arguably could not (or would not) enforce a subpoena

6. The State's concerns regarding an expeditious resolution of this dispute ring hollow when considered against its audit and litigation strategies. The record reflects that the State initiated its audit of Univar in 2015, sought records in 2016, corresponded with Univar regarding Univar's constitutionally based objections to the audit and related records requests for nearly two years, and then waited until October 30, 2018, to issue its subpoena. Even though it knew Univar challenged the statute upon which the subpoena was issued on constitutional grounds, the State did not promptly initiate an action to enforce its subpoena. On the other hand, Univar did not wait. It filed its action in the District Court on December 3, 2018, and raised each of the constitutional challenges it had been raising with the State since the unclaimed property audit began in 2015. Only then did the State rush to this Court to file its enforcement action.[20]

7. Univar maintains that the State reflexively filed here in hopes of avoiding an adjudication of the constitutional issues in the District Court given the

---

under Section 1171(4)). I reject summarily the argument that this was somehow error. *See Cummings*, 2013 WL 979417, at \*10 (issuing a stay *sua sponte*); *Online Res.*, 2010 WL 3949232, at \*1 (same); *Paolino*, 985 A.2d at 397 (same). To the extent the State is suggesting that it was not given an opportunity to be heard on the question of whether a stay should be ordered, that suggestion cannot withstand even casual scrutiny. Univar prosecuted a motion to dismiss **or stay** and the State was given a full opportunity to present all of its arguments against a stay (including the ones it presents in the Application) in opposition to that motion.

[20] Compl. ¶¶ 9–14; Def.'s Mot. to Dismiss, Ex. A; Tr. 17–18; Application 11–12.

State's poor track record of defending its escheat practices in the federal courts.[21]

Whether that is true or not is of no moment. What is relevant, however, is the State's delay in seeking to issue and then enforce its subpoena followed by the State's unwillingness to seek expedited resolution of the threshold constitutional and preemption issues in the District Court once it was sued there. This tactic is especially perplexing given the State's position that the Third Circuit has made clear that constitutional challenges to the Delaware escheat statutes should be brought in Delaware state courts,[22] and the State's motion to dismiss in the District Court on

---

[21] *See, e.g.*, *Marathon Petroleum Corp. v. Sec'y of Fin. for Del.*, 876 F.3d 481, 501 (3d Cir. 2017) (internal quotations omitted) (noting that Delaware's initiation of an escheat audit does not bar private parties from bringing suit to challenge that audit if the State's demands for information become "so obviously pretextual or insatiable . . . that it is evident that the result of [the] process must lead to conflict preemption"); *Temple-Inland, Inc. v. Cook*, 192 F.Supp. 3d 527, 541 (D. Del. 2016) (finding that aspects of the State's enforcement of unclaimed property laws were "troubling" and "shock[ed] the conscience" of the court in violation of substantive due process); *Marathon Petroleum Corp. v. Cook*, 208 F.Supp. 3d 576, 582 (D. Del. 2016), *vacated sub nom. Marathon*, 876 F.3d at 501–02 (dismissing for failure to state a preemption claim but noting, "[w]hile Plaintiffs are not currently the subject of an enforcement action, the aggressive and persistent nature of Defendants' audit, in conjunction with Defendants' letter threatening referral to the Attorney General, place Plaintiffs in a difficult position. They can either cooperate with an intrusive, lengthy, and potentially insatiable audit, or they can resist the audit and risk an 'enforcement action' from the Attorney General and, potentially, large penalties."); *Office Depot, Inc. v. Cook*, 238 F.Supp. 3d 616, 622 (D. Del. 2017), *vacated sub nom. Office Depot, Inc. v. Sec'y of Fin. for Del.*, 710 F. App'x. 59 (3d Cir. 2018) (dismissing for failure to state a preemption claim but noting, "[t]he Court agrees with Plaintiffs that they are suffering a real harm due to Defendants' [enforcement of unclaimed property laws]").

[22] *See* Application 10 (citing *Marathon*, 876 F.3d at 488). Univar disputes that reading of *Marathon*.

that basis and others.[23]  Rather than prosecute that motion, however, the State continues to press its strategy of having two courts litigate the same constitutional challenges to the same Delaware statutes at the same time.[24]  The inefficiencies of this approach are apparently lost on the State.  They are not lost on the Court.

8.  The State's argument that a stay of this litigation will encourage future subpoena recipients to file in federal court as a means to evade or delay compliance with the State's unclaimed property subpoenas is difficult to follow.  Once the constitutional issues are decided by the federal court(s) in this case, later subpoena recipients will have no reason to repeat the challenge.[25]  Either the State's authority to enforce its subpoenas will be upheld as constitutional or it will not be.  Moreover, as noted in the Order, if the State genuinely has a concern about subpoena recipients abusing federal process as a means to escape their statutory obligation to provide records, it can raise that concern with the District Court as a basis to seek expedited

---

[23] Tr. 14–15.

[24] *See* Application 11 (acknowledging that the State would have this Court and the District Court decide the proper construction of *Marathon* and related issues at the same time as both courts, at the moment, are "in exactly the same position" procedurally).

[25] As noted, a key aspect of Univar's constitutional challenge is that the State is improperly seeking to enforce Section 1171(4) retroactively.  As a practical matter, that argument will not be available to audit subjects in cases where the audit is commenced after Section 1171 was enacted.

adjudication of the preemption and constitutional issues regarding the exercise of its subpoena power.[26]

9.    For the foregoing reasons, I cannot certify that the likely benefits of interlocutory review outweigh the probable costs such that interlocutory review is in the interests of justice.  The State's Application for Certification of Interlocutory Appeal, therefore, must be **REFUSED**.


                                        */s/ Joseph R. Slights III*
                                        Vice Chancellor

---

[26] Tr. 46.